**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

     *-and-*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York            7:19-cv-09453

| | |
|---|---|
| Dewight Smith, individually and on behalf of all others similarly situated, | |
|                 Plaintiff | Complaint |
|     - against - | |
| Moran Foods, LLC, | |
|                 Defendant | |

       Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

       1.     Moran Foods, LLC ("defendant"), through its chain of Save-A-Lot grocery stores, manufactures, distributes, markets, labels and sells ice cream products purporting to contain flavor from their natural characterizing flavor, vanilla under their Crown Creamery and World's Fair brands ("Products").

2.      The Products are available to consumers from defendant's approximately 1300 Save-A-Lot grocery stores in thirty-six states including in New York and/or and directly from defendant's website.

3.      The Products are sold in containers including 1.5 and 1.75 quarts and represented as containing vanilla ice cream on the labels, in point-of-sale marketing, store display ads and print circulars and promotions, websites, television and/or radio ads.

Statement of Identity                                  Front Label

French Vanilla Ice Cream



Artificially        Flavored
Vanilla Light Ice Cream



I.    Ice Cream Products

4.    Ice cream is a year-round treat enjoyed by 96% of Americans.[1]

5.    Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[2]

6.    Ice cream is defined by a minimum of 10 percent milkfat, weighing no less than 4.5 pounds to the gallon and containing less than 1.4 % egg yolk solids.[3]

7.    When ice cream has 1.4% or more egg yolk solids as part of its base, it is referred to as "french ice cream."[4]

8.    According to ice cream lore, Thomas Jefferson supposedly "invented" vanilla ice cream when he learned of vanilla during his ambassadorship to France and upon returning to Monticello, mixed this bottle with the frozen milk and cream dessert he was fond of consuming while drafting the Declaration of Independence.[5]

## II.   Vanilla is Perennial Favorite Ice Cream Flavor

9.    Vanilla is the consistent number one flavor for 28% of consumers, confirmed two groups who would know – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

10.    The reasons for vanilla's staying power are "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats."[6]

11.    By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla

[1] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018
[2] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com, October 12, 2017.
[3] 21 C.F.R. § 135.110(a)(2) ("Ice cream and frozen custard.").
[4] 21 C.F.R. § 135.110(f)(1).
[5] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress; Anna Berkes, "Ice Cream" in Thomas Jefferson Encyclopedia, Thomas Jefferson Foundation, Inc., Monticello.org, June 28, 2013
[6] Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018

or vanilla with something stirred into it, like chocolate chips."[7]

12.   The applications of vanilla ice cream include its centerpiece between chocolate wafers ("sandwich"), enrobed in chocolate on a stick ("bar"), topping a warm slice of fresh-baked pie ("à la Mode"), drizzled with hot fudge and sprinkled with crushed nuts and topped by a maraschino cherry ("sundae") or dunked in a cold frothy glass of root beer ("float").[8]

III.  Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

13.   The tropical orchid commonly known as "vanilla" does not  develop its prized flavor on its own.

14.   By law, vanilla refers to the "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[9]

15.   Shortly after the passage of the Pure Food and Drugs Act of 1906, E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[10]

16.   This demand could not be met by the natural sources of vanilla, leading manufacturers to devise methods to imitate vanilla's flavor and appearance.

17.   Though the Pure Food and Drugs Act was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the

---

[7]Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[8] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.
[9] 21 C.F.R. §169.3(c)
[10] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein,  "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

genuine articles.[11]

18.   Daily headlines tell a story of a "resurgent" global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[12]

19.   While "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

20.   Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[13]

21.   The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities.[14]

| Type of Food Fraud | Application to Vanilla |
| --- | --- |
| ➢ Cheating on analytical tests by containing markers specifically tested for | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Cheating by giving consumers the impression the food or ingredient is present in greater amounts and/or higher quality form | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks they are a result of the product containing real vanilla bean, when the ground beans have been exhausted of flavor, and any vanilla flavor tasted may not even |

---

[11] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[12] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

[13] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.

[14] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

| | |
|---|---|
| than it actually contains | be due to the presence of real vanilla |
| ➤ Substitution or Replacement a food product/ingredient with an alternate food product/ingredient of lower quality | • Tonka beans, which are banned from entry to the United States, instead of vanilla beans<br>• Coumarin, phytochemical found in Tonka beans, to increase the vanilla flavor perception |
| ➤ Coloring agents to produce a more attractive color | • Caramel in vanilla extracts to darken the substance's color additives like caramel to enhance the hue of an imitation vanilla so it more closely resembles real vanilla[15]<br>• Annatto and turmeric in dairy products purporting to be flavored with vanilla, to darken the color to better resemble the hue of rich, yellow butter |
| ➤ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, derived from wood pulp, tree bark or coal tar |
| ➤ Ingredient list deception[16] | • Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list – "ground vanilla beans" as containing actual vanilla flavor when they are devoid of any naturally occurring vanilla flavor<br>• "Vanilla With Other Natural Flavor"<br>  o sold by more knowledgeable flavor suppliers to less knowledgeable yet sophisticated |

---

[15] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.
[16] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar

                    manufacturers who don't ask questions

- o flavor companies say "'trust us, you can call this 'natural flavor' and label the product as 'vanilla'"
- o flavor companies cite "proprietary" formulations and "trade secrets" and fail to disclose to their manufacturing customers that they have "boosted" the miniscule amount of vanilla in Vanilla WONF with a hearty dose of vanillin, in violation of law, to mislead consumers
- o flavor suppliers do not disclose that vanilla combined with vanillin and some "natural flavors" is required to state "artificial flavor"
- o Manufacturers are receptive to flavor manufacturers' calculated silence because consumers want to see the words "vanilla" and "natural" on the labels

➢ Diluting/Extending

- • Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[17]

- • "Spiking" or "fortification" of vanilla through addition of natural flavors including vanillin, which simulates vanilla taste but obtained from tree bark

➢ Compounding – "to mix flavor materials together at a special ratio in which

- • "Flavor Compounding Is a Skilled Art and Science Designed to Produce a Flavor Perception That Seems to be Authentic or at Least Derived from a

---

[17] Berenstein, 423.

they [sic] compliment each
other to give the desirable
aroma and taste."[18]

Natural Source"[19]

- What has changed?
  - o **Then (1911):** The "public should clearly understand" that flavor combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label."[20]
  - o **Now (2018):** According to the head of "taste solutions" at global conglomerate Kerry, "The challenge is to find a vanilla flavor that matches the taste of pure vanilla natural extracts."[21]
    - The solution?
    - "[G]et creative" and "build a compounded vanilla flavor with other natural flavors"
    - "This solution can provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."

IV.  What Consumers Expect from Ice Cream Labeling

22.    To prevent deception of consumers, the framework for labeling of ice cream has

provided for a system for designating characterizing flavors [in ice cream] which has come to be

---

[18] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[19] Charles Zapsalis et al., Food chemistry and nutritional biochemistry. Wiley, 1985, p. 611.
[20] Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168.
[21] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.

referred to as the 3 category flavor labeling.

23.    These categories are based on the

(i)      use of natural and various combinations of natural and artificial flavors that
characterize this food;

(ii)     source(s) of the characterizing flavor;

(iii)     flavor which predominates;

(iv)     amount of each flavor component in the product; and

(v)      percent of the total flavor component represented by a flavor component.[22]

A.  Natural and Artificial Flavor in Ice Cream Products[23]

24.    The expectations of consumers and legal requirements are different for ice cream and
non-ice cream products, which are covered under the general flavor labeling regulations at 21
C.F.R. § 101.22.

25.    In ice cream, a "natural flavor" refers *only* to a natural *characterizing* flavor and an
"artificial flavor" refers to any flavor not derived from the characterizing flavor.

26.    For example, in vanilla or strawberry ice cream, the natural flavor would be "vanilla"
or "strawberry."

27.    If any flavor, whether from a natural or artificial source, is used in ice cream to
simulate the characterizing flavor – vanilla, strawberry, etc. – it is considered and treated as an
artificial flavor, unless it is derived *from* the characterizing flavor – vanilla or strawberry.  *See* 21
C.F.R. §135.110(f)(2)(i) (no provision for natural flavors other than the "[natural] characterizing
flavor").

---

[22] 21 C.F.R. § 135.110(f)(2)(i)-(iii); 21 C.F.R. § 135.110(f)(3)-(5).
[23] Numerous advisory opinions and official guidance documents which have been unamended, unrevoked and
unmodified.

28.    Where an ice cream is represented on the front label with an unqualified name of the natural characterizing flavor, *viz*, "vanilla," followed by the term "ice cream," yet contains flavor not derived from that characterizing flavor, such a front label designation of "vanilla" would be inconsistent with law and misleading to consumers.

B. Category 1 Ice Cream Products

29.    For decades, consumers have expected products containing vanilla ice cream to be exclusively flavored by real vanilla derived from the vanilla plant and contain a sufficient amount of vanilla to characterize the food.

30.    This requirement is contained at 21 C.F.R. §135.110(f)(2)(i), which states that where an ice cream "contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla,' in letters not less than one-half the height of the letters used in the words 'ice cream'" and expressed in the following form:

> ["characterizing flavor"] + ["ice cream"] $\rightarrow$ "Vanilla Ice Cream" or "Strawberry Ice Cream." ("Category 1").

31.    Because ice cream is a standardized food and the vanilla ingredients are subject to their own standards, the designation of the vanilla flavoring is controlled by 21 U.S.C. §343(g):

> A food shall be deemed to be misbranded –
>
> (g) Representation as to definition and standard of identity
>
> If it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title, unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food.

32.    This means that where an ice cream characterized by a vanilla and does not contain

artificial flavor, its ingredient list is required to bear "the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food."[24]

33.    For vanilla ice cream, the common names of these flavorings include Vanilla Extract, Concentrated Vanilla Extract, Vanilla Flavoring and Concentrated Vanilla Flavoring, specified in the regulations for vanilla ingredients.  *See* 21 C.F.R. §§ 169.175 to 169.178.

C.  <u>Category 2 Ice Cream</u>

34.    If an ice cream contains a natural characterizing flavor (i.e., vanilla) and an artificial flavor simulating it, and if the natural flavor predominates, a non-misleading label would be expressed in the following form:

["characterizing flavor"] + ["flavored"] + ["ice cream"] → "Vanilla Flavored Ice Cream" or "Peach Flavored Ice Cream." ("Category 2").

*See* 21 C.F.R. §135.110(f)(2)(ii).

D.  <u>Category 3 Ice Cream</u>

35.    If an ice cream contains a natural characterizing flavor and an artificial flavor simulating it, and if the artificial flavor predominates, or if only artificial flavor is used, a non-misleading label would be expressed in the following form:

["artificial" or "artificially flavored"] + ["characterizing flavor"] + ["ice cream"] → "Artificially Flavored Vanilla Ice Cream" or "Artificially Flavored Strawberry Ice Cream." ("Category 3").

*See* 21 C.F.R. §135.110(f)(2)(iii).

V.  French Vanilla Ice Cream Products' Representations are Misleading

36.    The French Vanilla Ice Cream Products give consumers the impression that vanilla is the sole flavor source due to one or more of the statements or representations on the front label including the following, shown in the images below.

_____

[24] 21 U.S.C. § 343(g)(2) read with 21 C.F.R. § 135.110(f)(2)(i) and 21 C.F.R. §§ 169.175 – 169.178.

- Absence of the term "flavored" from front label or product description;

- Unqualified "French Vanilla Ice Cream" representation

- Vanilla flower vignette on front label

- Deep yellowish color of ice cream

- Dark brown specks appearing to be the result of real vanilla beans

Front Label                                   Statement of Identity

 

37.   The French Vanilla Ice Cream Products are misleading because they do not contain the amount, type and percentage of vanilla as a component of the flavoring in the product which is required and consistent with consumer expectations.

38.   The term "French" is not a license to provide consumers a different amount, type and modify the amount of vanilla or proportion of vanilla compared to the total flavoring ingredients percentage of vanilla, when it comes to ice cream.

39.   The descriptor "French" or "french" preceding "vanilla" does not modify the word "vanilla."

12

40.     Instead, "French" means amount the ice cream base contains 1.4% or more egg yolk solids.[25]

41.     The egg yolk solids with the vanilla distinguish a french vanilla ice cream variant by contributing to a:[26]

- smoother consistency and mouthfeel than typical vanilla ice cream;
- caramelized, smoky and custard-like taste; and
- pale-yellow color.

A. <u>French Vanilla Ice Cream Ingredient List Discloses Non-Vanilla Flavors</u>

42.     The French Vanilla Ice Cream Products are misleading because they are not flavored only by vanilla but contain flavors derived from non-vanilla sources, which is misleading to consumers.

43.     This is revealed through the ingredient list, below, indicating the Product contains "Natural Flavor" as the flavoring ingredient which is inconsistent with an ice cream flavor represented by an unqualified "Vanilla."[27]



**INGREDIENTS:** MILKFAT AND NONFAT MILK, SUGAR, CORN SYRUP, EGG YOLKS, WHEY, BUTTERMILK, CONTAINS 1% OR LESS OF: NATURAL FLAVOR, GUAR GUM, MONO- AND DIGLYCERIDES, LOCUST BEAN GUM, XANTHAN GUM, CARRAGEENAN, VANILLA BEANS, ANNATTO (COLOR).

---

[25] 21 C.F.R. § 135.110(f)(1) ("The name of the food is 'ice cream'; except that when the egg yolk solids content of the food is in excess of that specified for ice cream by paragraph (a) of this section, the name of the food is 'frozen custard' or 'french ice cream' or 'french custard ice cream'.)
[26] Sheela Prakash, What's the Difference Between Vanilla and French Vanilla Ice Cream?, The Kitchn, June 7, 2017.
[27] 21 C.F.R. § 135.110(f)(2)(ii).

B.  Natural Flavor in Ice Cream Distinguished

44.    A natural flavor in the context of ice cream is different than a natural flavor provided for by the general flavoring regulations.

45.    Outside of the ice cream context, "natural flavor" refers to "the essential oil, oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material and can refer to combinations of natural flavors.[28]

46.    Where a product purports to have a characterizing flavor of vanilla but the ingredient list identifies "natural flavor" as the exclusive flavoring ingredient or as one among such flavoring ingredients, it means (1) the flavoring in the food or beverage is not exclusively vanilla and (2) the product contains non-vanilla flavors obtained from natural sources other than vanilla beans and made through natural processes.[29]

47.    In ice cream, a natural flavor refers to the "natural characterizing flavor" – for vanilla ice cream, this is vanilla and for chocolate ice cream, chocolate.

48.    "Artificial flavor" in the context of ice cream refers to all flavors that are not natural characterizing flavors, even if they are obtained from natural sources and made through natural processes.[30]

C.  "Natural Flavor" is not a Synonym for Expected Vanilla Ingredients

49.    Defendant's listing of "natural flavor" is not another way to refer to the exclusively vanilla flavoring ingredients that consumers expect, and the law requires.

---

[28] 21 C.F.R. § 101.22(a)(3).

[29] These natural processes may include fermentation but when high heat and high pressure is used, the FDA considers this to be a synthetic method of obtaining a flavor.  This "natural" process of high heat and high pressure is used to obtain vanillin from the non-vanilla material of eugenol, the main component of clove oil. Vanillin derived from eugenol through a high heat and high pressure process is not considered "natural vanillin" which makes its addition to the "WONF" part of "Vanilla WONF" misleading.

[30] Compare 21 C.F.R. § 101.22 (natural flavor) with 21 C.F.R. § 169.175 (Vanilla extract.) and § 169.177 (Vanilla flavoring.).

50.    These exclusively vanilla ingredients – vanilla flavoring, vanilla extract, etc. – differ only in that the former is at least thirty-five (35) percent ethyl alcohol while the latter is less than this amount.[31]

51.    If the Products contained any of the exclusively vanilla ingredients, there would not be a need to declare or identify "Natural Flavor" in the ingredient list.

52.    Additionally, it would be illogical to use a more expensive and higher quality ingredient (vanilla extract or vanilla flavoring) but designate it with a vague term perceived less favorably by consumers due to its opaque components, lower cost and ubiquity.

D.    Natural Flavor does not refer to the Standardized Vanilla-Vanillin Ingredients

53.    The vanilla standards reference three vanilla-vanillin combinations – Vanilla-vanillin extract, Vanilla-vanillin flavoring and Vanilla-vanillin powder.[32]

54.    The standardized vanilla ingredients – vanilla extract, vanilla flavoring, concentrated vanilla flavoring, and vanilla powder – *could* be understood as complying with the requirements for "natural flavor" even though they are required to be designated by their common or usual names on the ingredient list.[33]

55.    However, the "vanillin" referred to in the standardized combination ingredients is produced from non-vanilla bean materials, like wood pulp, coal tar, eugenol, lignin or plant fiber.

56.    While vanillin is a main flavoring component of vanilla, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant.

57.    This type of "natural vanillin" is rarely produced, which means that almost all

[31] 21 C.F.R. §§ 169.175 (Vanilla extract.), 169.177 (Vanilla flavoring.); also concentrated versions of each of these.
[32] 21 C.F.R. § 169.180, § 169.181, § 169.182.
[33] 21 C.F.R. § 169.175 (Vanilla extract.), § 169.176 (Concentrated vanilla extract.), § 169.177 (Vanilla flavoring.), § 169.178 (Concentrated vanilla flavoring.) and § 169.179 (Vanilla powder.).

15

vanillin is synthetically produced and has no connection to the vanilla bean.

58.    The labeling and disclosure for a vanilla-vanillin combination ingredient would be controlled not by the general flavoring regulations but by the vanilla standards.

59.    These ingredients require that on the ingredient list, vanilla be "followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring),'" even if the vanillin is made from natural materials and through a natural process [34]

60.    If a product made with a vanilla-vanillin combination ingredient represented that its characterizing flavor was vanilla, its front label would be required to declare the presence of vanillin and/or artificial flavor(s).

61.    These requirements prevent consumers from being misled by products which "boost," "fortify" or "spike" a miniscule amount of real vanilla with the addition of vanillin, from non-vanilla sources such as tree bark, eugenol and lignin.

62.    Without any conspicuous disclosure of how much flavor in a product is derived from real vanilla as opposed to vanillin, consumers would pay more money for products that may taste like vanilla even though the taste is not derived from vanilla beans.

63.    For the purposes of ice cream flavor labeling, vanillin (from non-vanilla sources) cannot be designated as a "natural flavor" because it implies it derives from vanilla beans, whose flavor it simulates.[35]

64.    This applies even when vanillin is produced through a natural process (fermentation), such that it is properly designated as "vanillin derived naturally through fermentation."

65.    This means if a vanilla flavor is derived from any source other than vanilla, it is

---

[34] See 21 C.F.R. § 169.180(b), § 169.181(b), § 169.182(b).
[35] 21 C.F.R. § 101.22(a)(3)

16

accurately designated as an artificial flavor.[36]

66.   Therefore, the standardized vanilla-vanillin combination ingredients are not the ingredients used in the Products but for some reason, designated as "natural flavor."

E.   <u>"Natural Flavor" May Refer to "Vanilla with Other Natural Flavors" ("Vanilla WONF")</u>

67.   A typical ingredient used when giving consumers less vanilla than they are expecting and entitled to is "Vanilla With Other Natural Flavors" or "Vanilla WONF."

68.   When adding complicated flavors to a product, a flavor supplier typically mixes various flavors together into one package, for reasons including convenience and processing.

69.   Since vanilla is the world's second most valuable flavor ingredient, flavor suppliers and the companies they work with are continually exploring new ways to increase profits at the margins, at the expense and to the detriment of consumers and in violation of law.

70.   By formulating a flavor ingredient that includes an unspecified amount of vanilla – likely less than half – and compounding, extending and/or diluting it with "other natural flavors," or flavors not derived from vanilla, they can plausibly call this ingredient "Vanilla With Other Natural Flavors."

71.   No standardized vanilla ingredients provide for "other natural flavors" to be added with a vanilla flavoring or vanilla extract because this would result in the spiking or fortification of the vanilla flavor.

72.   On the Product's ingredient lists, "Vanilla WONF" is likely designated through the term "Natural Flavor."[37]

---

[36] In contrast to the regulations at 21 C.F.R. § 101.22.
[37] The natural flavor as part of the vanilla ice cream component is distinct from any natural flavor that may be used in the inclusions such as the chocolate chips or cookie dough.

73.     In an ice cream represented as flavored only from the characterizing flavor, it is:[38]

1.    deceptive and unlawful to include flavoring that is not derived from the characterizing flavor, vanilla; and

2.    misleading and unlawful to simulate, reinforce and "extend" the taste of vanilla through "Natural Flavor" because consumers will:

    i.      think they received more real vanilla than they actually did;

    ii.     expect all of the vanilla flavor or taste imparted by the Products to be from vanilla; and

    iii.    pay more for such product.

F.    "Vanilla Beans" in the Product is Misleading

    i.    Consumers Will Expect Vanilla Beans Means More Real Vanilla

74.    The Product identifies "VANILLA BEANS" as an ingredient.



**INGREDIENTS:** MILKFAT AND NONFAT MILK, SUGAR, CORN SYRUP, EGG YOLKS, WHEY, BUTTERMILK, CONTAINS 1% OR LESS OF: NATURAL FLAVOR, GUAR GUM, MONO- AND DIGLYCERIDES, LOCUST BEAN GUM, XANTHAN GUM, CARRAGEENAN, VANILLA BEANS, ANNATTO (COLOR).

75.    "Vanilla beans" is a common though misleading name to refer to "vanilla bean seeds or specks," shown below.[39]

Vanilla Beans with Seeds Inside                        Vanilla Bean Seeds

---

[38] 21 C.F.R. § 135.110(f)(2)(i).
[39] Cook's Illustrated.

 

76.     Consumers will see the specks in the ice cream on the front label and expect the Product to contain the flavor imparted by *actual* ground vanilla beans.



77.     Should they seek to dispel any ambiguity through review of the ingredient list, they will only be further misled by this partial disclosure of "vanilla beans."

78.     The presence of "ground vanilla beans" on the ingredient list is deceptive and misleading because the reasonable consumer is not likely to be knowledgeable of the commercial practices of the secretive and opaque flavor industry.

    ii.    "Vanilla Beans" Refers to Beans Devoid of Flavor

79.     After flavor companies have extracted all of the available flavor from vanilla bean

19

seeds:

> the vanilla bean pods and seeds sink to the bottom and are filtered from the extract. As a final step, the vanilla bean seeds are sifted from the spent vanilla bean pods. The resulting bean pods and seeds are known as "exhausted," because all flavor has been extracted.[40]

80.    These exhausted vanilla bean seeds "act strictly in a cosmetic manner, as they are flavorless."[41]

81.    According to one company that trades in vanilla products, "[T]he demand for exhausted or spent vanilla, (vanilla waste after extraction), and vanilla seeds sifted from this material has exploded over the last 12 months" because the amount of actual vanilla has been at low levels, in part due to climactic conditions.[42]

82.    In fact, one well-respected vanilla importer has hypothesized that recent large requests for vanilla bean seeds may be an indicator of something more sinister:

> The mismatch between demand for vanilla seeds and vanilla extract makes it impossible to supply enough seeds. Since the seeds are a small by-product of vanilla extract, and we cannot obtain them unless we buy (extremely expensive) whole vanilla bean pods and make (extremely expensive) pure vanilla extract from them.

83.    Since even the lowest quality unexhausted vanilla bean pods cost at least $100 per pound, it is economically impossible to justify purchasing vanilla bean pods only for the seeds.

84.    The conclusion:

> [S]ome of the seeds you see are not vanilla bean seeds at all. Just as with pure vanilla extract, we suspect significant adulteration of exhausted vanilla bean seeds in the industry.
>
> …
>
> It's almost impossible to tell the difference in the lab between vanilla bean seeds and exhausted coffee grounds. All residual flavor is gone, so only DNA analysis could detect the product's fingerprint, a ridiculous test to perform on ice cream.

---

[40] Cook's Blog, Vanilla Bean Seeds: A Troubling New Trend, June 13, 2019.
[41] Chat Nielsen, Jr., The Story of Vanilla, p. 15.
[42] Aust & Hachman Canada, May 2019 Update.

…

To be clear, we have no proof this is happening. But our years of expertise in the vanilla extract industry and dairy manufacturing lead us to believe that something fishy is going on with the exhausted vanilla bean seed market. The math does not add up.[43]

85.   Exhausted or spent vanilla beans are also commonly repurposed and infused with synthetic vanillin or other flavoring substances and then incorporated into food labeled as "vanilla."

86.   However, they still would have no connection to actual vanilla and actual vanilla beans which have not had all the flavor extracted from them before they were ground up and used.

87.   It is plausible and likely that the vanilla beans in the French Vanilla Ice Cream Products are in fact, exhausted, or spent vanilla beans because:

> (1) the use of unexhausted ground vanilla beans would result in inconsistent flavoring from batch to batch;
>
> (2) there are not enough unextracted vanilla beans available in commerce to be used on a mass production scale in products like here;
>
> (3) if the Products sought to provide real vanilla flavor the flavoring ingredient would exclusively consist of vanilla extract or vanilla flavoring; and
>
> (4) microbiological and other issues related to processing weigh against the use of ground vanilla beans which have not been exhausted.

## VI.  World's Fair Vanilla Light Ice Cream Products are Misleading

88.   The World's Fair Vanilla Light Ice Cream Products are misleading because the disclosure of "Artificially Flavored" next to "Vanilla" on the front label is not conspicuous to the

---

[43] Vanilla Bean Seeds: A Troubling New Trend, *supra*.

reasonable consumer under customary conditions of purchase.



89.     Consumers rely on the front labels of products to present information in a straightforward, non-deceptive way that is conspicuous.

90.     The World's Fair Vanilla Light Ice Cream Products front label appears to intentionally confuse and mislead consumers and is contrary to law.

91.     "Artificially Flavored" is part of these Products' statement of identity which is required to be presented in bold type.[44]

92.     While the placement of "Artificially Flavored" adjacent to "Vanilla" and its comparable font size conforms with what is required so consumers are not misled, its thin blue font on a blue background make it inconspicuous to the reasonable consumer.[45]

93.     The inconspicuousness of the "Artificially Flavored" disclosure on the front label

---

[44] 21 C.F.R. § 101.3(b)(1); 101.3(d).
[45] 21 C.F.R. § 135.110(f)(3)(ii) ("Wherever the name of the characterizing flavor appears on the label so conspicuously as to be easily seen under customary conditions of purchase, the words prescribed by this paragraph [artificially flavored] shall immediately and conspicuously precede or follow such name") (emphasis added).

makes it redundant for the consumer to "double check" on the ingredient list, below, which indicates the presence of artificial flavor.



INGREDIENTS: MILKFAT AND NONFAT MILK, SUGAR, HIGH FRUCTOSE CORN SYRUP, BUTTERMILK, CORN SYRUP, WHEY, CONTAINS 1% OR LESS OF: ARTIFICIAL FLAVOR, PROPYLENE GLYCOL MONOESTER, MONO- AND DIGLYCERIDES, GUAR GUM, CELLULOSE GUM, POLYSORBATE 80, CARRAGEENAN, ANNATTO (COLOR), VITAMIN A PALMITATE, CARAMEL COLOR.

94.    The requirement for prominent and conspicuous disclosure of material information is especially important in ice cream products because the packaging has a tendency to ice up due to being kept in freezers and the constant freeze-thaw cycle such products undergo.

95.    This exposure renders it more likely that the disclosures that are present will be obscured for consumers at the point of purchase.

VII. Coloring Misleads Consumers to Expect Products Contain More Vanilla Than They Do

96.    The Crown Creamery French Vanilla and World's Fair Vanilla Products contain annatto for coloring purposes, indicated on their ingredient lists.

97.    Annatto is often used in cheddar cheese to provide a rich yellow-orange shade evocative of milkfat associated with butter, produced by dairy cattle in the United States.

98.    No allegation is made with respect to how annatto and turmeric are declared or about their use, which is specifically permitted by regulation.[46]

---

[46] 21 C.F.R. § 101.22(k)(3)

99.   The added coloring provided to the Products by annatto modifies the color of the vanilla ice creams to a color closer to a vanilla ice cream flavored exclusively by flavor from the vanilla plant.

100.   The result is the darker color as indicated below, which is similar in appearance to color of the ice cream scoops on the front labels.



101.   The darker color makes the consumer (1) less likely to question or be skeptical of the amount and type of vanilla in the Products, (2) less likely to scrutinize the entire packaging, (3) expect the Products to be similar to other, accurately labeled vanilla ice creams and (4) expect the Products contain more vanilla than they actually do.

VIII.     French Vanilla Ice Cream Products are Misleading Because They are Labeled and Named Similar to Other Products

102.   Competitor brands to defendant's French Vanilla Ice Cream Products are labeled as or containing vanilla ice cream and are not misleading because they do not contain non-vanilla flavoring.

A.  "French Vanilla" of Competitor and Defendant

103.   The following is an example of French Vanilla Ice Cream of defendant and a competitor product.

Competitor Product[47]                                    Product

                    

Ice Cream Made with Egg Yolks, Pure
Vanilla Extract and Ground Vanilla
Beans

104.   The ingredients in the Competitor Product and Product are presented below.

Ingredients

Milk, Cream, Sugar, Corn Syrup, Stabilizer (Carob Bean Gum, Guar Gum), Pasteurized Egg Yolks, Color
(Annatto And Turmeric), Pure Vanilla Extract And Ground Vanilla Beans.

Competitor
Product
            Milk, Cream, Sugar, Corn Syrup, Stabilizer (Carob Bean Gum, Guar Gum),
            Pasteurized Egg Yolks, Color (Annatto And Turmeric), <mark>Pure Vanilla Extract</mark> And
            Ground Vanilla Beans.

---

[47] Publix Premium Ice Cream, French Vanilla 0.5 GL (1.89 LT), accessed September 10, 2019.



Product

> **INGREDIENTS:** MILKFAT AND NONFAT MILK, SUGAR, CORN SYRUP, EGG YOLKS, WHEY, BUTTERMILK, CONTAINS 1% OR LESS OF: NATURAL FLAVOR, GUAR GUM, MONO- AND DIGLYCERIDES, LOCUST BEAN GUM, XANTHAN GUM, CARRAGEENAN, VANILLA BEANS, ANNATTO (COLOR).

105.   The competitor product lists "Pure Vanilla Extract" on its ingredient list and does not indicate the presence of other flavors not derived from vanilla, such as "Natural Flavor," as listed in defendant's Products.

B.   Misleading to Have Identical or Similar Product Names Where Significant Differences in Product Quality or Composition

106.   Product names for ice cream are established through application of the relevant regulations.

107.   This product naming framework is intended to ensure that products of different quality, i.e., one product contains a greater amount, type and/or proportion of a characterizing and valuable ingredient, are not named in such a way that the consumer will be deceived into purchasing the lower quality product under the false impression that it contains the equivalent amount of said ingredients or components.  *See* 21 C.F.R. § 135.110(f) and 21 C.F.R. § 102.5(a)

("General principles.").[48]

108.   Defendant's French Vanilla Ice Cream Product is misleading because it is represented as identical to another product which contains higher quality ingredients, which causes consumers to be misled and purchase the former expecting the two products to be identical in quality and fill.

IX.  Conclusion

109.   The proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

110.   Had Plaintiff and Class members known the truth about the Products, they would not have bought the Product or would have paid less for it.

111.   The Products contain other representations which are misleading and deceptive.

112.   As a result of the false and misleading labeling, the Products are sold at premium prices, approximately no less than (1) $3.79, per 1.5 quart of the Crown Creamery French Vanilla Product and (1) $2.89, per 1.75 quart of the World's Fair Vanilla Light Product, excluding tax – compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

113.   Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

114.   Plaintiff Dwight Smith is a citizen of New York State.

115.   Defendant Moran Foods, LLC, a Missouri limited liability company, has, upon

---

[48] "The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name. Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods."

information and belief, no members that are citizens of New York.

116.   Since plaintiff and defendant are citizens of different states, diversity of citizenship is satisfied.  28 U.S.C. § 1332(d)(2)(A) ("Under CAFA, [t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant").

117.   Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

118.   This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

## Venue

119.   Under 28 U.S.C. § 1391(c)(2), defendant, a limited liability company, is considered a resident "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question....").  *Gen. Elec. Capital Corp. v. Titan Aviation, LLC*, No. 06-cv-4795 (LTS)(FM), 2007 WL 107752, at *6 (S.D.N.Y. Jan. 16, 2007) ("A corporate entity or multi-member partnership is considered a resident of any district where it is subject to personal jurisdiction.").

120.   Defendant operates one store in Westchester County, New York in Peekskill and two stores in Newburgh and Port Jervis, Orange County, New York.

121.   These three stores of defendant are located within the area encompassed by the Southern District of New York, Northern Counties.

122.   Since New York has more than one judicial district and defendant is a limited liability company subject to personal jurisdiction in New York at the time of filing, defendant is "deemed

to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d); *Abergel v. Atlas Recovery Sober Living*, No. 19-cv-6339 (CM) (S.D.N.Y. Aug. 19, 2019) ("Where a state has more than one judicial district, a defendant corporation generally "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d)").

123.   Because defendant is deemed to reside in this judicial district, venue is proper in this district.  28 U.S.C. § 1391(b)(1) ("Venue in General. – A civil action may be brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located").

124.   A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

125.   Plaintiff Dwight Smith is a citizen of Bronx County, New York.

126.   Defendant is a Missouri limited liability company with a principal place of business in St. Ann, St. Louis County, Missouri and upon information and belief, at least one member of defendant is not a citizen of New York.

127.   During the class period, Plaintiff purchased one or more of the Products identified herein for personal use, consumption or application based on the above representations, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

128.   Plaintiff would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

## Class Allegations

129.  The classes will consist of all consumers in all 50 states with sub-classes for the individual states and nationwide classes.

130.  Plaintiff will represent her New York state sub-class of persons who purchased any Products containing the actionable representations during the statutes of limitation.

131.  Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if Plaintiff and class members are entitled to damages.

132.  Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

133.  Plaintiff is an adequate representative because her interests do not conflict with other members.

134.  No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

135.  Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

136.  Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

137.  Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
and Consumer Protection Statutes of Other States and Territories

138.  Plaintiff asserts causes of action under the consumer protection statutes of New York, General Business Law ("GBL") §§ 349 & 350.

139.  Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

140.   Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

141.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because (1) it gives the impression to consumers the Products are only flavored by the characterizing ingredient and contains more of the characterizing ingredient than they actually do, (2) the ingredient list fails to dispel ambiguity and reinforces the front-label impression as to a greater amount of the characterizing ingredients (3) it does not conspicuously disclose the presence of artificial flavors on one of the Products identified here.

142.   Plaintiff and class members relied on the representations and omissions, paying more than they would have, causing damages.

Negligent Misrepresentation

143.   Plaintiff incorporates by reference all preceding paragraphs.

144.   Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing the characterizing ingredient was present in greater amount and proportion than it was and affirmatively representing the Products was flavored only by this ingredient or component.

145.   Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

146.   This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

147.   The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

148.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

149.  Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

150.  Plaintiff incorporates by reference all preceding paragraphs.

151.  Defendant manufactures and sells products which contain the identified characterizing ingredients and/or flavors which are desired by consumers.

152.  The Products warranted to Plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

153.  Defendant's front labels informed and warranted to Plaintiff the Products contained only the characterizing ingredients to impart flavor, and that they were present in amounts sufficient to independently characterize the food and that the flavor imparted to the Products was a result of the food ingredients and not "natural flavors," "other natural flavors" or "artificial flavors."

154.  Defendant had a duty to disclose and/or provide a non-deceptive description of the Products flavoring on the front labels and knew or should have known same were false or misleading.

155.  This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

156.  Plaintiff provided or will provide notice to defendant and/or its agents,

32

representatives, retailers and their employees.

157. The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

158. Plaintiff and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

159. Plaintiff incorporates by references all preceding paragraphs.

160. Defendant's purpose was to sell products which purported to contain valuable and desired characterizing ingredient(s) or flavor(s), and represent the Products were exclusively or predominantly flavored from that ingredient and contained sufficient independent amounts of same.

161. The Products were not flavored exclusively from the characterizing ingredient but from flavor compounds blended together and labeled as "natural flavor."

162. Defendant's fraudulent intent is evinced by its failure to accurately indicate the Products contained flavor from non-vanilla sources on the front label, because it knows consumers prefer foods that are flavored from food ingredients instead of added flavor ingredients and contain enough of the characterizing food ingredients to flavor the Products.

163. Defendant's intent was to secure economic advantage in the marketplace against competitors by appealing to consumers who value products with sufficient amounts of the characterizing ingredients for the above-described reasons.

164. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

165.  Plaintiff incorporates by references all preceding paragraphs.

166. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE,** Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   October 12, 2019

                                        Respectfully submitted,

                                        Sheehan & Associates, P.C.
                                        /s/Spencer Sheehan
                                        Spencer Sheehan
                                        505 Northern Blvd., Suite 311
                                        Great Neck, NY 11021

(516) 303-0552
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

*-and-*

Reese LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
mreese@reesellp.com

7:19-cv-09453
United States District Court
Southern District of New York

Dewight Smith, individually and on behalf of all others similarly situated

Plaintiff

- against -

Moran Foods, LLC

Defendant

## Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  October 12, 2019

/s/ Spencer Sheehan
Spencer Sheehan